IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ATRIUM 5 LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:16 CV 3 SMY/RJD |
| ) | |
| LATOIYA BUTCHEE, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| CERTAIN UNDERWRITERS AT ) | |
| LLOYD'S LONDON, et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court pursuant to the Discovery Dispute Conferences on August 22, 2016 and on December 12, 2016. (Docs. 42, 66.) On January 4, 2016, Plaintiff commenced this action seeking a declaration of rights with respect to an insurance policy issued to Plaintiff. (Doc. 1.) On July 1, 2016, Defendant filed a third party complaint asserting breach of contract, bad faith refusal to settle, and estoppel against Certain Underwriters at Lloyd's, London, ("Lloyd's") and negligence against Cutler Insurance Agency. LLC ("Cutler Insurance"). (Doc. 26.) On August 22, 2016, during a discovery dispute conference, Magistrate Judge Philip M. Frazier ordered Plaintiff to submit the documents identified in its privilege logs for *in camera* review. (Doc. 42.) On November 18, 2016, the Court requested additional argument with regard to the objections and privileges related to commissions, fees, and reserve amounts and set a discovery dispute conference, which was held on December 12, 2016. (Doc. 61.)

## FACT ALLEGATIONS

To provide the necessary context for this discovery dispute, the Court will provide a brief overview of the fact allegations in the complaints. This case is based on a six-month insurance policy on a vacant property issued by Plaintiff (the insurer) to Defendant (the insured) on June 18, 2015. (Doc. 1.) On May 26, 2015, the insured purchased a vacant property (the "Property") for $20,000. In the application for the insurance policy, the insured represented that she had no loss exceeding $25,000 on any rented or owned property within three years; that the Property was vacant; and that the Property was secured against unauthorized entry. The application warned that providing false information could result in the denial of a claim or a void policy.

On July 3, 2015, the fire department responded to a fire in the building on the Property, and the suspected cause of the fire was arson. The insured submitted a claim to the insurer, and during the investigation, the insured testified that: (1) on February 25, 2015, she had purchased a different property for $25,000, which she insured with Allstate for $100,000; (2) on March 3, 2015, that property sustained a fire loss; and (3) Allstate paid her approximately $100,000 for the loss. The insured further testified that the prior owners had access to the building on the Property through at least July 1, 2015. On September 2, 2015, the insurer denied the claim on the Property, citing material misrepresentations in the insurance application. The insurer seeks a declaratory judgment that the insurance policy is void due to the material misrepresentations regarding the prior loss and due to breach of warranty with respect to the prior owner's access to the Property.

On July 1, 2016, the insured filed a third party complaint against Lloyd's and Cutler Insurance. (Doc. 26.) According to the insured's complaint, Lloyd's is the insurer, and Cutler Insurance assisted Defendant in obtaining the policy at issue. The insured alleges claims of

breach of contract, bad faith refusal to settle a claim, and estoppel against Lloyd's and claims of negligence against Cutler Insurance. She specifically alleges that Cutler Insurance acted negligently by submitting the application of insurance without asking the insured questions or reviewing the application with the insured.

## DISCUSSION

The parties' arguments focus on the issue of relevance. Plaintiff also asserted in its brief and privilege log that much of the information requested is proprietary and confidential. The Court finds that these concerns can be addressed through a protective order. *See Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998) ("to facilitate discovery, confidential information is customarily made available under a protective order").

Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Rule 26 vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1) is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000). The Seventh Circuit has recognized a trial court's "broad discretion over discovery matters." *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004).

### Commissions

The insured seeks to discover the commissions paid for the insurance policy to the coverholder,[1] J.M. Wilson, who entered into the insurance policy with the insured as the

---

[1] "Coverholder" means "a company or partnership authorised by a Managing Agent to enter into a contract or contracts of insurance to be underwritten by the members of a syndicate managed by it in accordance with the terms

3

insurer's agent. The insurer argues that the commissions are irrelevant to the legal claims in this action. The insured responds that the commissions are relevant with respect to J.M. Wilson's credibility, relationship with the insurer, and whether J.M. Wilson acted with due diligence.

The Court notes the questions raised by the complaints regarding the issuance of the insurance policy and understands that J.M. Wilson had a role in issuing the insurance policy. While the requested information may not be relevant to the insurer's claims, it is relevant to the insured's claim of estoppel presented in the third party complaint. Under Illinois law, "equitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001). "The general rule is that where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Id.* The insurer has represented that J.M. Wilson acted as its agent in issuing the insurance policy, and the insured alleges that the conduct of the insurer's agent estops the insurer from asserting fraud as a contractual defense.[2]

Considering that the scope of the estoppel claim encompasses the conduct of the agent that issued the policy, J.M. Wilson's credibility and relationship with the insurer are relevant

---

of a Binding Authority." Lloyds, https://www.lloyds.com/the-market/i-am-a/delegated-authority/compliance-and-operations/about-coverholders (last visited on December 16, 2016). As counsel for the insurer explained, J.M. Wilson acted as the agent for the insurer, and Cutler Insurance acted as the agent for the insured.

[2] In the third party complaint, the insured specifically alleges that Cutler Insurance rather than J.M. Wilson acted as the insurer's agent. However, this discrepancy does not negate the relevance of this line of inquiry for purposes of discovery; the gist of the estoppel claim is that the insurer (through an agent) induced her misrepresentations on the policy application.

4

issues. Therefore, the Court finds the commissions paid to J.M. Wilson are relevant to the claims in this case for purposes of discovery.

### Investigation Fees

The insured also seeks to discover the fees paid to various entities that participated in the investigation of the insurance claim, including McLarens Global Claims, the local adjuster, Atrium Risk Management Services, and the insurer's law firm. As with the commissions, the insurer argues that the fees paid are irrelevant to the legal claims before the Court, and the insured argues that the fees are relevant to the relationship between the parties.

The insured alleges a claim of bad faith refusal to settle. The relevant factors for such claims include the advice of the insurer's adjusters and counsel, *O'Neill v. Gallant Ins. Co.*, 769 N.E.2d 100, 106-07 (Ill. App. 2002), as well as the manner of investigation of the insurance claim. *Id.; Cook ex rel. Cook. v. AAA Life Ins. Co.*, 13 N.E.3d 20, 37 (Ill. App. 2014); *Buais v. Safeway Ins. Co.*, 656 N.E.2d 61, 64-65 (Ill. App. 1995). The Court understands these entities participated in the investigation of the insurance claim in some capacity. Thus their conduct may be relevant to the insured's bad faith claim, and the fees paid may be relevant for purposes of credibility or motive. Therefore, the Court finds the investigation fees are relevant to the claims in this case for purposes of discovery. However, the Court also will grant the insurer's request to redact attorney-client privileged information from these records. To the extent invoices from attorneys are to be produced, the insurer may redact specific entries describing the work performed, leaving only the dollar amounts billed.

### Reserve Amounts

The insured further seeks to discover the reserve amounts for the policy at issue.[3] The

---

[3] "A 'loss reserve' is, in simple terms, the insurer's own estimate of the amount which the insurer could be required to pay on a given claim. This not only helps insurers 'budget' their finances, but is generally required by statute or

insurer argues that reserve amounts are not relevant to the issue of whether an insurance policy covers a claim. The insured responds that the reserve amount is relevant to the investigation process of the insured's claim and relates to the claim of bad faith. Under Illinois law, for a bad faith determination, "a trial court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her or his property." *Am. States Ins. Co. v. CFM Const. Co.*, 923 N.E.2d 299, 308 (Ill. App. 2010).

In support of its argument, the insurer cites two cases. First, in *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1154 (N.D. Ill. 2001), the court granted a motion in limine to prohibit references to the setting or computation of reserve amounts. The court distinguished between claims involving first party insurance and third party insurance claims and found reserve amounts irrelevant to first party insurance claims, reasoning that for first party insurance claims, "the policy either provides coverage or does not." *Id.* The court stated, "in first-party insurance, the insurer's good faith is determined (1) by the manner and depth of its investigation, and (2) the determination of whether there was a good faith factual or legal question as to whether the loss was covered." *Id.* In *Harleysville Lake States Ins. Co. v. Lancor Equities, Ltd.*, 2014 WL 5507572, at *6-7 (N.D. Ill. 2014), the court relied on the reasoning in *Spearman* but also distinguished the bad faith claims under Illinois law from those in other jurisdictions. More specifically, bad faith claims under Illinois law are ancillary to a breach of contract claim, whereas other jurisdictions allow bad faith claims as separate torts. *Id.* at *6-7; *see also Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902-04 (Ill. 1996).

---

regulation as to the aggregate of the claims against the insurer." 17A Couch on Ins. § 251:29. Although the parties primarily refer to "reserve amounts" rather than "loss reserves," the context of the dispute suggests that the terms are interchangeable.

The Court is not persuaded by the reasoning of *Spearman* and *Harleyville Lake States Ins.* The Court observes that *Spearman* was decided under the more stringent standards for admissibility. *See* Fed. R. Civ. P. 26(1). ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Furthermore, at the discovery dispute conference, the insured noted that the reserve amounts may have been considered during the investigation of the insurance claim, which relates directly to the elements of a bad faith claim as set forth in *Spearman*. Additionally, the Court finds the distinction in *Harleyville Lake States Ins.* inapposite in light of Illinois' requirement that a court consider the totality of the circumstances for bad faith determinations. Significantly, other courts have allowed parties to discover reserve amounts, reasoning that the information is relevant to whether the insured acted in bad faith. *See Cummins, Inc. v. Ace Am. Ins. Co.*, 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565, at *9 (C.D. Ill. Jan. 31, 2005); *see also* 17A Couch on Ins. § 251:29 ("Overall, there is little unanimity on the discovery of an insurer's loss reserves."). Because bad faith claims are determined with reference to the totality of the circumstances, the Court finds the reserve amounts are relevant to the claims in this case for purposes of discovery.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Plaintiff Atrium 5 Limited produce unredacted copies of the *in camera* documents as they relate to commissions, fees, and reserve amounts, except to the extent that the records contain attorney-client privileged information.

**SO ORDERED.**

**DATED: January 6, 2017**                                  s/     *Reona J. Daly*
                                                                               UNITED STATES MAGISTRATE JUDGE